[No. 29240. Department Two. May 14, 1945.]

CORNELIUS ROOT *et al., Appellants,* v. MARGARET McNARY, *Respondent.*

MARGARET McNARY, *Respondent,* v. CORNELIUS ROOT *et al., Appellants.*[1]

*Ward & Barclay,* for appellants.

*Henderson & McBee,* for respondent.

ROBINSON, J.—In 1915, Joseph McNary and Margaret McNary purchased a weekly newspaper in Anacortes, Washington, for the sum of five thousand two hundred dollars, of which amount Margaret McNary furnished four thousand six hundred fifty dollars from her separate funds. Some ten years later, the plant was expanded, and the paper was published as a daily, under the name of Anacortes Daily Mercury. Both parties devoted full time to its management and production.

[1] Reported in 158 P. (2d) 642.

In 1940, Mr. McNary brought an action for divorce, and Mrs. McNary counterclaimed. The court entered an interlocutory decree on August 6, 1940, in which McNary was awarded the Anacortes Daily Mercury and some other property situated in Anacortes. Mrs. McNary received a judgment for six thousand seven hundred fifty dollars, which, by the express terms of the decree, was made a lien on the paper and the other property. Mrs. McNary appealed, and this court rendered a decision on April 4, 1941, modifying the property adjustment as follows:

"Taking all these factors into consideration, we think, as a basis for settlement of property rights, there should be set off to each of the parties their separate interests. In other words, of the total property, valued at seventeen thousand six hundred dollars, there should be awarded to respondent the Kansas land (fifteen hundred dollars), and to appellant, four thousand six hundred and fifty dollars, the amount of the investment of her separate funds in the Daily Mercury. The balance, eleven thousand four hundred and fifty dollars, being community property, should be equally divided. In reaching this conclusion, we have not overlooked the fact that respondent testified he was indebted to his mother in the sum of sixteen hundred dollars. Appellant owes her sister five hundred dollars. The trial court very properly left the obligation of paying these items upon the respondent and appellant, respectively." *McNary v. McNary,* 8 Wn. (2d) 250, 111 P. (2d) 760.

The remittitur reached the lower court on May 11, 1941. On May 12, 1941, despite the terms of the remittitur, a modified interlocutory decree was entered, apparently by agreement between the parties, in which McNary was awarded certain real estate in Kansas and Anacortes, two life insurance policies, and the newspaper business, and Mrs. McNary, a judgment for eight thousand five hundred seventy-five dollars, one thousand dollars to be paid within thirty days, the balance monthly, but all in three years, and the entire amount was made a lien on the assets of the Anacortes Daily Mercury and the Anacortes real estate.

We are concerned in this appeal with certain obligations incurred in running the business while the appeal in the

divorce action was pending. These obligations were for services rendered to the paper during the month of April, 1941. The appellants, Root and Gent, published the Anacortes American, a weekly newspaper, at Anacortes. About April 1, 1941, three days before this court decided the appeal, the McNarys having lost their linotype operator, Mr. McNary asked Mr. Root to have the Anacortes American temporarily print the Daily Mercury, and Root agreed to do so. The Anacortes American thereafter published the Daily Mercury up to and including the April 26th issue and assisted with the composition work on the remaining issues up to the end of the month. The appellants' claim is made up of these items:

| Printing the Daily Mercury from April 1 to April 26, 1941, inclusive | $359.00 |
|---|---|
| Composition work on April 28 and 29, 1941 | 7.50 |
| Job work and supplies | 26.85 |
| Total | $393.35 |
| August 4, 1941 paid on account | 50.00 |
| Balance owing | $343.35 |

In order to get at the questions involved in the case, it is necessary to determine what Mrs. McNary's relationship was to the Daily Mercury during this period. After the entry of the original interlocutory decree and during the appeal from it, and for sometime after the remittitur came down, Mrs. McNary continued in the office of the paper, and the business was conducted much as it had been for some years before.

For some years, the McNarys had not spoken to each other. When communication was necessary in carrying on the business, they wrote notes. Mrs. McNary occupied the front office, received all checks and cash which came in over the counter, deposited them in her own private banking account, the Mercury account having been closed, and paid most of the bills. She kept the books, supervised the carriers, read proof, wrote the society and local news,

and, on occasions when McNary, who ran the composition room, wrote a note and requested funds for the payment of bills, furnished the money for that purpose. She continued to carry on in this manner until about the middle of June, 1941.

About the middle of March, 1942, McNary disappeared from Anacortes and has not been heard from since. He left a letter for Mrs. McNary, which read as follows:

"I am having to give up the Mercury to you for the load has become more than I can carry. I am getting too old, and the strain will render me useless if kept up.

"I hoped to fight it through, even though the valuation and amount to pay you were so high. I expected there would be an accurate appraisal of values, but instead a remark I made in testimony that at one time (boom days) we could have sold for $10,000 was used. Also the courts should have known no business with the owners fighting each other would have such value.

"To pay you the $8,000.00 would take all the rest of my life, and if I became ill or incapacitated, would have to give up. Even now my nervous condition is such that I cannot work at times.

"I might keep going if I did not have to pay you the monthly award in cash, or could get a young partner to help pay it out if not so much, but although I have tried can get no one to pay that much, even including the real estate here.

"I have arranged with the American to keep the paper going until you get organized. If Gale comes in and with Tottie's financial backing you should do all right. Especially as you seem to have all the luck. . . ."

A few days after McNary disappeared, Mrs. McNary took possession of the paper and has since operated it.

The final decree of divorce was not entered until March 22, 1943. In the meantime, Root and Gent instituted this action against Joseph McNary and Margaret McNary, his wife, getting jurisdiction as to McNary by attachment and publication. Thereafter, Mrs. McNary instituted suit against McNary, Root, and Gent to foreclose the lien of the judgment in her favor, upon which there remained a balance of six thousand six hundred seventy-five dollars. The two actions were consolidated, and the judgment from

which this appeal is taken was entered in August, 1943.

The court gave judgment in favor of Root and Gent and against Mrs. McNary for forty-nine dollars, which was the cost of printing certain Saturday issues of the paper which, the trial judge found, had been printed by her direct request, but denied recovery against her in any further amount. He gave judgment against McNary for $294.35, and judgment in favor of Mrs. McNary for six thousand six hundred seventy-five dollars, adjudging this amount to be a first and paramount lien on the assets of the Daily Mercury and other property in Skagit county awarded to McNary in the divorce action and superior to the judgment in favor of Root and Gent. He further directed that the assets of the Daily Mercury be first sold and the proceeds applied toward the satisfaction of the judgment in favor of Mrs. McNary.

■ It is our opinion that the equities in this case are very definitely with the appellants, Root and Gent. McNary and wife had operated a newspaper for twenty-five years, and an interlocutory decree of divorce awarded certain property to McNary, of which property the newspaper was by far the most valuable item. Mrs. McNary was given a cash award of six thousand seven hundred fifty dollars, to be paid in installments, and, as between the parties, a lien to secure them, with privilege of foreclosure in case of default. She appealed, superseding the decree. During the pendency of the appeal, she jointly operated the paper with her husband. She freely admits she did this to protect her interest in it.

On April 1, 1941, before this court had acted on this appeal, an emergency arose. It was necessary to suspend the publication of the paper unless someone was employed to print it until a linotype operator could be secured. It is true the evidence is that McNary made the actual arrangement with Root, but Mrs. McNary, whose prospective interest in the continued welfare of the paper was great, was aware of the arrangement and received the benefit of it. Nor is that all; she actually modified and expanded it. On April 11th, McNary ordered Root and Gent to discon-

tinue printing the Saturday issue. Mrs. McNary immediately countermanded that order, and the court found that two Saturday issues were published (respondent contends, three) and rendered judgment against Mrs. McNary for that portion of the bill. This is, in effect, a holding that Mrs. McNary was the proprietor and publisher of the Anacortes Daily Mercury on Saturday, and Mr. McNary was the proprietor and publisher the balance of the week. We think there is neither reason nor warrant for this artificial conception. It may be difficult to fit the relationship of the McNarys during this period into the rigid definition of partnership or of joint adventure, but, disregarding form and looking at substance, it is clear that they were jointly and severally liable for the claims sued upon. Clearly, they both acted as principals, and also as agents for each other, in ordering the work done.

There is much argument in the briefs concerning priority of liens. Mrs. McNary's lien was wholly a creation of the court. There is little analogy between it and true liens, such as, for instance, a mortgage lien; for the so-called lien would have disappeared altogether had McNary died previous to the entry of the divorce decree on March 22, 1943, since an interlocutory decree of divorce becomes a nullity upon the death of one of the parties before the entry of the final decree. But, as respondent says, Root and Gent had no lien at all, and, although a court of equity may create one in order to do justice between the parties, we do not think that such a case is here presented, or that such action is required.

It is ordered that the judgment appealed from be modified by increasing the amount of the judgment of Root and Gent against Joseph O. McNary to $343.35, and their judgment against Margaret McNary to a like amount, both to bear interest from May 1, 1941. The appellants will recover their statutory costs in this court.

MILLARD, BLAKE, SIMPSON, and MALLERY, JJ., concur.

---

July 21, 1945. Petition for rehearing denied.